

FILED
2008 Mar-05  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS MICHAEL HOBSON, Sr., as Administrator of the Estate of JUDY SHIPP BELCHER, deceased, and for the benefit of her next of kin, | ] ] ] ] ] | |
| Plaintiff, | ] ] | |
| vs. | ] ] | 7:07-CV-00502-LSC |
| BIBB COUNTY COMMISSION, KEITH HANNAH, DANNY GOTHARD, ADAM MOORE, CHRIS BILLINGSLEY, TAMEKA BRAY, FELISHA CASH, C.L. CUTTS, IRBY FOSTER, ARTHUR LOTT, LEE RHINE, CEDRIC STABLER, SHAUNTEY STEWART, and GAYLE TAYLOR, | ] ] ] ] ] ] ] ] ] ] ] | |
| Defendants. | ] | |

MEMORANDUM OPINION

I.     Introduction.

The Court has for consideration Defendant Bibb County Sheriff Keith Hannah's ("Hannah") Motion to Dismiss (Doc. 2), filed on March 20, 2007; Defendant Bibb County Commission's ("Commission")  Motion to Dismiss (Doc. 4), filed on March 20, 2007; Defendants Danny Gothard's, Irby

Foster's, Lee Rhine's, Arthur Lott's, and Chris Billingsley's Motion to Dismiss (Doc. 6), filed on March 20, 2007; Defendant Adam Moore's Motion to Dismiss (Doc. 18), filed on April 23, 2007; and Plaintiff's Motion to Alter or Amend the Order granting Defendants' Motion to Dismiss Fictitious Parties (Doc. 28), filed on January 3, 2008.

Plaintiff Thomas Michael Hobson, Sr., filed suit as administrator of the Estate of Judy Shipp Belcher ("Plaintiff") against Defendants and several fictitious parties in the Circuit Court of Bibb County, Alabama, on February 23, 2007, alleging violations of her rights under the Constitution and laws of the United States and the State of Alabama.  The original complaint was amended to add additional defendants on February 26, 2007.  On March 20, 2007, Defendants removed the action to this Court.[1]  In his complaint, Plaintiff asserts claims alleging violations of  42 U.S.C. § 1983 ("§ 1983") based on "deliberate indifference" (Count I), ALA. CODE § 14-6-19 due to a

---

[1]Defendants Bibb County Commission, Keith Hannah, Danny Gothard, Irby Foster, Lee Rhine, Arthur Lott, and Chris Billingsley removed the action to this Court, asserting jurisdiction pursuant to 28 U.S.C. § 1331.  While Defendants Tameka Bray, C. L. Cutts, Cedric Stabler, and Gayle Taylor did not join in the removal, this Court found, in its opinion on Plaintiff's motion to remand, that all currently served Defendants joined in or consented to the removal petition; therefore, the Plaintiff's motion to remand was denied.  (Doc. 24.)

breach of the duty to maintain the jail and provide adequate funding for "necessary medicines and medical attention" (Count II), and ALA. CODE § 6-5-410 for the wrongful death of Judy Shipp Belcher based on Defendants' actions (Count III).  Plaintiff seeks both compensatory and punitive damages.

The issues raised in the motions currently before the Court have been briefed by the parties and are now ripe for consideration.   Upon full consideration of the legal arguments and evidence presented, the motions are due to be granted in part and denied in part.

II.    Facts.[2]

On February 26, 2005, Judy Shipp Belcher ("Decedent") was incarcerated at the Bibb County Jail ("Jail").  According to Plaintiff, while Decedent was incarcerated, she was taunted by guards, including Defendant Adam Moore, and was told that she would never be released from Jail.  In addition, Decedent allegedly expressed her intent to commit suicide to defendants and to a friend, and acted in a manner that indicated her suicidal nature.  While in Jail, Decedent allegedly informed the guards at

---

[2]Unless otherwise indicated, the facts are taken from Plaintiff's Complaint and Amended Complaint.

the Jail, including one or more of the defendants, that she intended to commit suicide.  Also, in the presence of one or more of the defendants, Decedent made a telephone call to a friend, and expressed her intent to commit suicide.  After receiving the phone call from Decedent, the friend contacted one or more of the defendants and notified them that Decedent was suicidal.  In addition, another inmate at the Jail heard Decedent express her intent to commit suicide, saw signs that Decedent was attempting to kill herself, and called out to the guards, including one or more of the defendants, requesting that they tend to Decedent.  Further, throughout her incarceration, Decedent was upset, crying, and repeatedly made statements regarding suicide.  After being detained at the Jail for less than 24 hours, Decedent committed suicide on February 26, 2005.

According to Plaintiff, Jail personnel were inadequately trained.  For example, while Decedent was allegedly suicidal, she was not placed in a suicide cell nor was she placed in a cell where she could be observed by Jail personnel.

As a direct and proximate result of the inadequacies of the defendants, Decedent suffered great physical pain, extreme emotional

distress, mental anguish, and death.  In addition, Decedent's estate suffered funeral costs and other related expenses.

III.    Standard of Review.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  *St. George v. Pinellas*

*County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003)(quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)).  Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364 (11th Cir. 1997).

IV.     Motion to Dismiss.

        A.     Bibb County Commission.

               1.     Section 1983 Claim.

Defendant Bibb County Commission contends that the Amended Complaint is unclear as to the Commission's liability under 42 U.S.C. § 1983; however, the Commission argues that the § 1983 based claim is due to be dismissed because (1) as a matter of law, the Commission, having no authority over the Bibb County Sheriff, the sheriff's employees, or the operation of the jail, cannot be held liable for the policies or conduct of the

sheriff, his employees, or jail operations; and (2) the Commission has no duty under Alabama law to provide inmate medical care or prospectively fund such care.  (Docs. 4 & 5.)  Plaintiff "concedes that the § 1983-based cause of action is not directed at the Bibb County Commission and further concedes that he is not seeking to hold the Bibb County Commission legally liable for the conduct of Sheriff Hannah or jail employees in connection with the operation of the jail."  (Doc. 29 at 2.)  Thus, the claim under  § 1983 against the Commission is due to be dismissed.

       2.    State Law[3] Claims.[4]

          a.    Ala. Code § 14-6-19.[5]

---

[3]Under Alabama law, a county or county agency is subject to suit.  *See Cook v. County of St. Clair*, 384 So. 2d 1, 5 (Ala. 1980).

[4]Plaintiff contends that he "only opposes Bibb County Commission's request for a 12(b)(6)-based dismissal of the asserted state-law based claims that do not involve the conduct of the sheriff or jail employees and/or the day-to-day operations of the county jail."  (Doc. 29 at 2.)

[5]Defendant argues that Plaintiff lacks standing to make a claim based upon Alabama Code § 14-6-19 because the statute does not provide for a private right of action.  (Doc. 5 at 9.)  However, case law appears to permit an administrator of an estate to bring a claim under such statute.  *See Lancaster v. Monroe County Ala.*, 116 F.3d 1419 (11th Cir. 1997); *Kelly v. Owens*, 2006 WL 3421257, at *7 (M.D. Ala. 2006); *Shaw v. Coosa County Comm'n*, 434 F. Supp. 2d 1199 (M.D. Ala. 2005); *Shaw v. Coosa County Comm'n*, 330 F. Supp. 2d 1285 (M.D. Ala. 2004); *Gaines v. Choctaw County Comm'n*, 242 F. Supp. 2d 1153 (S.D. Ala. 2003).

In Count II of his Amended Complaint, Plaintiff alleges that the Commission has a duty to provide adequate funding for necessary medicines and medical attention to inmates in the county jail; that the Commission breached its duty to maintain the Jail by failing "to insure that the statutory and regulatory provisions requiring necessary medicines and medical attention were met" and "breached its duty to provide adequate funding for the medical treatment and failed to provide sufficient funds to staff the county jail so that the personnel" could tend to inmates' medical needs; and that this breach caused Decedent's death.  (Am. Compl. at ¶¶ 30-34.)

Under Alabama law, Alabama counties "possess some duties with respect to county jails."  *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998).  "[N]one of these duties relate to the daily operations of the jails or to the supervision of inmates."  *Id.*  Rather, "[t]he duties of the counties with respect to the jails 'are limited to funding the operation of the jail and to providing facilities to house the jail.'" *Id.* (quoting *Stark v. Madison County*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996)).  The county commission "is charged with erecting and maintaining jails."  *Id.* at 1290.

In addition, Alabama Code § 14-6-19 provides that:

> Necessary clothing and bedding must be furnished by the sheriff
> or jailer, *at the expense of the county*, to those prisoners who
> are unable to provide them for themselves, and also *necessary
> medicines and medical attention* to those who are sick or
> injured, when they are unable to provide them for themselves.

ALA. CODE § 14-6-19 (1975)(emphasis added).[6]  This statute "places a duty on

the county to fund [the medical care described in the statute]."  *Shaw*, 330

F. Supp. 2d at 1289 (quoting *Gaines*, 242 F. Supp. 2d at 1161).   Section

14-6-19 places an obligation upon the county to provide medical services "to

inmates in the county jail who are unable to pay for medicines or medical

services."  *Ex parte Univ. of S. Ala.*, 812 So. 2d 341, 346 (Ala. 2001)(citing

*Malone v. Escambia County*, 22 So. 503, 505 (Ala. 1897).[7]  While the county

---

[6]The terms of § 14-6-19 "have been strictly construed."  *Baptist Health Sys., Inc. v. City of Midfield*, 792 So. 2d 1095, 1096 (Ala. 2001).

[7]This Section "deals with the county's obligation with regard to indigent inmates in its jails."  *Ex parte Univ. of S. Ala.*, 812 So. 2d at 346; *see also Limestone County v. City of Huntsville Hosp. Bd.*, 412 So. 2d 792, 793-94 (Ala. Civ. App. 1982)(stating that Limestone county "has been authorized to pay the medical expenses of indigent prisoners" who are confined to jail).  Plaintiff argues that, based on *Gaines v. Choctaw County Comm'n* and *Shaw v. Coosa County Comm'n*, "being indigent is no longer a prerequisite to the right to rudimentary, necessary medical care" while being held in a county jail.  (Doc. 29 at 7.)  *See Gaines*, 242 F. Supp. 2d 1153; *Shaw*, 330 F. Supp. 2d 1285.  However, neither of the cases relied on by Plaintiff are binding on this Court.  In addition, the Alabama Supreme Court has held, as recently as 2001, that § 14-6-19 deals with the county's obligations with regard to indigent inmates.  *See Ex parte Univ. of S. Ala.*, 812 So. 2d at 346.  Therefore, this Court cannot find that being indigent is no longer a prerequisite to the right of medical care.

commission is responsible for funding necessary medical treatment, the Eleventh Circuit has recognized that "under Alabama law the County is not responsible for assuring procedures are in place for inmates to get medical care."[8]  *Marsh*, 268 F.3d at 1026 n.6.  The Eleventh Circuit did note that counties are assigned a limited role to build and fund the jails. *Id.*

Here, Plaintiff alleges that the Commission's breach of its duty to provide adequate funding for medical treatment for inmates caused the lack of medical screening for Decedent's mental condition, resulting in her death.   In addition, Plaintiff contends that the Commission's failure to provide sufficient funds to staff the county jail resulted in a lack of medical treatment in the jail, which resulted in Decedent's death. Before committing suicide, Decedent was incarcerated for, at most, one day. (Am. Compl. at ¶¶ 18, 25.)  Allegedly, Decedent, a friend of Decedent, and another inmate all informed guards of Decedent's intent to commit suicide,

---

[8]In *Marsh v. Butler County, Ala.*, the Eleventh Circuit addressed the issue of deliberate indifference under § 1983 with respect to a county.  268 F.3d at 1026.  The court held that "the County is not a responsible party for the alleged tort of deliberate indifference to Owen's medical needs," and therefore dismissed the claim.  *Id.* at n.6.  However, the court did not address the issue of failure to fund necessary medicines and medical attention under Alabama Code § 14-6-19.

and requested that they tend to and treat Decedent.  *Id*. at  ¶¶ 20-23.

Similarly plead causes of action under Alabama Code § 14-6-19 have been

deemed sufficient to preclude Rule 12(b)(6) dismissal.  *See Kelly,* 2006 WL

3421257, at *7 (citations omitted); *Shaw*, 330 F. Supp. 2d at 1289 (where it

was alleged that a breach of the county's duty to provide adequate funding

for medical treatment of and medicines for inmates of the county jail

caused the inmate's death, the court could not hold that the motion to

dismiss should be granted); *Gaines*, 242 F. Supp. 2d at 1159 (precluding a

12(b)(6) dismissal and concluding that the plaintiffs asserted facts which, if

proved, might support a claim under § 14-6-19, arising from the duty

pursuant to § 14-6-19, a breach of the duty by failure to adequately fund

staff to provide medical care, causing decedent's death, and resulting in

damages); *compare Shaw v. Coosa County Comm'n*, 434 F. Supp. 2d at 1203

(where the court, at summary judgment stage, found that "no reasonable

jury could find that a policy of the County Commission with respect to

funding jails or, more specifically, with respect to medical treatment for

persons held in jails was the moving force behind . . . Stroud's death").[9]

_____

[9]This Court notes that none of the cases cited are binding precedent.

Construing the Amended Complaint in the light most favorable to Plaintiff, the Court cannot conclude that no relief could be granted under any set of facts that could be proven consistent with the allegations.   While the Commission is not responsible for assuring procedures are in place for inmates to get medical care, the Commission does possess the duty of funding the Jail.   *See Marsh*, 268 F.3d at 1026.   Since the Amended Complaint alleges that Decedent's death occurred because of the Commission's failure to fund medical treatment in the Jail, the Court cannot say as a matter of law that the Commission cannot be held liable.   *See Gaines*, 242 F. Supp. 2d 1153; *Shaw*, 300 F. Supp. 2d 1285.   Thus,  the Commission's motion to dismiss on this issue is due to be denied.

b.    Wrongful Death.

Alabama Code § 6-5-410 provides:

A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death.

ALA. CODE § 6-5-410 (1975).   For a wrongful death claim, a plaintiff must

produce evidence as to the existence of the basic elements of a tort claim,

such as duty, breach, causation, and damages.   *See Vinson v. Clark County,*

*Ala.*, 10 F. Supp. 2d 1282 (S.D. Ala. 1998).

Under Alabama law, the duties of the county commission with respect

to the jails include "funding the operation of the jail and [] providing

facilities to house the jail." *Turquitt*, 137 F.3d at 1289 (quoting *Stark*, 678

So. 2d at 787).   County commissions are not charged with the duty of

operating jails, rather, the Alabama code provides the sheriff with "control

over the inmates of the jail, the employees of the jail, and the jail itself."

*See Turquitt*, 137 F.3d at 1289; *see also Ex parte Sumter County*, 953 So. 2d

1235, 1238 (Ala. 2006); ALA. CODE § 14-6-1 (1975).   It is not possible for a

county commission "to act negligently or wantonly in regard to the oversight

of inmates in the jail" because there is no duty that the county can breach

as to the daily management of the jail and the care of the inmates.   *See*

*Vinson*, 10 F. Supp. 2d at 1282.   Thus, the Commission cannot be held liable

for any action resulting from the hiring, training, or supervising of jail

employees.   Further, the county commission cannot be held vicariously

liable for the actions or omissions of the sheriff or jail personnel.  *See Ex parte Sumter County*, 953 So. 2d at 1238.   According to the Alabama Supreme Court, "the sheriff's authority over the jail is totally independent of the [county commission]."  *Turquitt*, 137 F.3d at 1289 (quoting *King v. Colbert County*, 620 So. 2d 623, 625 (Ala. 1993)).   Therefore, "by holding that the authority of the sheriff over operation of the jail is 'totally independent' of the county commission," the Alabama Supreme Court has dispelled the theory of a partnership between the county commission and the sheriff and/or his employees.   *Turquitt*, 137 F.3d at 1290 (citing *King*, 620 So. 2d at 625).   Consequently, the Commission cannot be held vicariously liable for the conduct of the sheriff or other jail personnel. Thus, any liability resulting from the incident at the Jail must be based on the negligent construction or maintenance of the Jail.

Alabama law provides that suicide generally acts as an intervening cause, which breaks all causal connection between the alleged wrongful or negligent acts and the death at issue.  *See Gilmore v. Shell Oil Co.*, 613 So. 2d 1272, 1275-76 (Ala. 1993).  A defendant typically cannot be held liable for the suicide of the decedent unless "the relationship between a decedent

and a defendant is such that we expect the defendant to take reasonable steps to protect the decedent from deliberate and self-destructive injury." *Vinson,* 10 F. Supp. 2d at 1304 (quoting *Gilmore*, 613 So. 2d at 1278).   The Alabama Supreme Court has noted that this type of relationship may be found to exist "in a custodial situation where suicide is foreseeable [, typically in the case of] hospitals or prisons." *See id.*

Here, the Commission was not Decedent's actual custodian, nor was it in a position to assess her suicidal tendencies.   Instead, the Commission merely provided the Jail facilities where Decedent was incarcerated.   *See Stark*, 678 So. 2d at 788 (noting that an Alabama county's duty is merely "to provide adequate facilities and equipment to house the jail and to provide funding for certain aspects of operating the jail"). In this limited capacity, the Commission did not have control over jail operations or custodial supervision. *See Turquitt*, 137 F.3d at 1290 (finding that the governing Alabama statutes "do not imply or impart any control over the jails' operation").   The duty of monitoring an inmate remains with the sheriff or jail personnel.   Therefore, the custodial relationship needed to impose a duty to prevent suicide is between Decedent and the sheriff or jail

personnel.  Since the Commission did not have a custodial relationship with

the Decedent, Plaintiff's claim against the Commission for wrongful death

is due to be dismissed.

      3.    Claims for Damages.[10]

To the extent that the Amended Complaint includes a claim for

compensatory damages in excess of $100,000.00 and punitive damages

against the Commission, such claims must be dismissed.  With regard to

compensatory damages, Alabama law provides that "[t]he recovery of

damages under any judgment against a governmental entity[11] shall be

limited to $100,000.00 for bodily injury or death for one person in any single

occurrence."  ALA. CODE § 11-93-2 (1975).  In addition, under Alabama state

law, punitive damages may not be awarded against a county or municipality.

---

[10]Plaintiff states that neither of these two contentions—the compensatory damages cap and the punitive damages immunity—would entitle Bibb County to a 12(b)(6) dismissal. (Doc. 29 at 3.)  While Plaintiff "appreciates this compensatory-damages cap and immunity from punitive damages enjoyed by Bibb County Commission," he does not respond since these are not germane to Bibb County Commission's entitlement to a Rule 12(b)(6).  *Id*. However, to the extent that the Amended Complaint contains claims for such damages, this section will address such claims.

[11]A governmental entity is "[a]ny incorporated municipality, any county and any department, agency, board or commission of any municipality or county, municipal or county public corporations and any such instrumentality or instrumentalities acting jointly."  ALA. CODE 1975 § 11-93-1(1)(1975).

*See* ALA. CODE § 6-11-26 (1975); *Harrelson v. Elmore County, Ala.*, 859 F.

Supp. 1465, 1469 (M.D. Ala. 1994)(applying Alabama Code § 6-11-26 to strike

punitive damages claims under state law).  Also, it has been established that

local governments are immune from punitive damages under Section 1983.

*See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981);

*Wheeler v. City of Pleasant Grove*, 883 F.2d 267, 271 (11th Cir. 1987);

*Housing Investors, Inc. v. City of Clanton*, 68 F. Supp. 2d 1287, 1296 (M.D.

Ala. 1999).  Thus, to the extent that Plaintiff claims compensatory damages

in excess of $100,000.00 or punitive damages, such claims are due to be

dismissed.

Based on the foregoing, the Commission's Motion to Dismiss is due to

be granted in part and denied in part.

B.    Individual Defendants.

Defendants Bibb County Sheriff Keith Hannah;[12] Bibb County Jailers

_____

[12]Defendant Hannah contends that (1) he is entitled to a dismissal of the § 1983 claim in
his official capacity due to  Eleventh Amendment immunity and because public officials
are not "persons" under § 1983; (2) he is entitled to dismissal of the § 1983 claim in his
individual capacity because he is entitled to qualified immunity; and (3) he is entitled
to dismissal of Plaintiff's state law claims due to his absolute immunity.  (Doc. 3.)  Since
Plaintiff has conceded that the § 1983-based claim is due to be dismissed against all the
defendants in their official capacity and that the wrongful death claim is due to be
dismissed against all such defendants in both official and individual capacity (Doc. 30),

Danny Gothard,[13] Irby Foster,[14] Lee Rhine, Arthur Lott, and Chris Billingsley

---

Hannah's motion to dismiss is due to be granted as to such claims.  In addition, Plaintiff concedes that it was not factually alleged that Hannah was present at the Jail during Decedent's incarceration, observed the acts described in the Amended Complaint, or was informed of those acts.  (Doc. 30 at 4.)  Therefore, Plaintiff concedes that he cannot prosecute a § 1983 individual capacity claim against Hannah since he cannot prove that Hannah had actual personal knowledge that Decedent might take her own life.  *Id.  See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115-17 (11th Cir. 2005)(to succeed on a § 1983 claim, since neither vicarious liability nor respondeat superior exists, plaintiff must establish that the sheriff himself was deliberately indifferent to the possibility of decedent's suicide and that the sheriff had knowledge of a strong likelihood that decedent would commit suicide).  Thus, Hannah's motion to dismiss is due to be granted in its entirety.

[13]Defendants Gothard and Foster contend that (1) they are entitled to a dismissal of the § 1983 claim in their official capacity due to  Eleventh Amendment immunity and because public officials are not "persons" under § 1983; (2) they are entitled to dismissal of the § 1983 claim in their individual capacity because they are entitled to qualified immunity; and (3) they are entitled to dismissal of Plaintiff's state law claims due to absolute immunity.  (Doc. 6.)   Based on Plaintiff's concessions, Defendants Gothard's and Foster's motion to dismiss is due to be granted with respect to the § 1983 official claim and the wrongful death claim in both their official and individual capacity.  (*See* Doc. 30.)   In addition, Plaintiff does not oppose a dismissal as to the § 1983 claim asserted against Gothard and Foster in their individual capacity.  *Id.*  Plaintiff concedes that it was not factually alleged that Gothard was present at the Jail during Decedent's incarceration.  *Id.* at 4.  Therefore, Plaintiff concedes that he cannot prosecute a § 1983 individual capacity claim against Gothard since he cannot prove that Gothard had actual personal knowledge that Decedent might take her own life.  *Id.  See Cook ex rel. Estate of Tessier*, 402 F.3d at 1115-17.  Also, since Defendant Foster has provided documentary evidence that he was not employed at the Jail on the date made a basis of this suit, Plaintiff does not oppose granting Foster's dismissal as to the § 1983 claim in his individual capacity because if Foster was not on duty, he could not have had the requisite actual personal knowledge to hold him individually liable under a § 1983 based claim.  Thus, the Jailers' motion to dismiss (Doc. 6) is due to be granted in its entirety with respect to Defendants Gothard and Foster.

[14]*See* Section IV(B) n.13 *supra*, discussing Defendants Gothard's and Foster's Motion to Dismiss.

("Jailers"); and Defendant Adam Moore[15] have all filed motions to dismiss the § 1983-based claims and the wrongful death claims.  (Docs. 2, 6 & 18.) Plaintiff concedes that "all of the individual defendants in their official capacity are entitled to dismissal of the § 1983-based claims because, in their official capacity, each is entitled to 'Eleventh Amendment' immunity." (Doc. 30 at 3.)  In addition, Plaintiff concedes that "in light of the holding and analysis in *Ex parte Sumter County*, 953 So. 2d 1235 (Ala. 2006), all of the individuals, in both their official capacity and individually, are entitled to absolute immunity as to the state-law based wrongful-death cause of action." *Id.*  Therefore, all of the individual defendants' motions to dismiss are due to be granted as to the § 1983-based claim in the defendants' official capacity and as to the wrongful death claim in both the defendants' individual and official capacities.  In addition, Plaintiff "does not oppose

---

[15]Defendant Moore contends that Plaintiff's claims under § 1983 against Moore in his official capacity are due to be dismissed.  (Docs. 18 & 19.)  Since Plaintiff has conceded that the § 1983-based claim is due to be dismissed against Moore in his official capacity (Doc. 30), Moore's motion to dismiss is due to be granted. While Moore did not request a dismissal as to the wrongful death claim, Plaintiff "voluntarily acknowledges that it would be ultimately fruitless to continue prosecuting such a state-law based claim against Moore."  (Doc. 30.)  Thus, Moore's motion to dismiss (Doc. 18) is due to be granted.  However, Plaintiff's claim under § 1983 against Moore in his individual capacity remains.

granting Sheriff Hannah, Gothard, and Foster a dismissal as to the § 1983

claims asserted against them in their individual capacity."  (Doc. 30 at 13.)

Thus, the Court will only address the federal claim as to each remaining

defendant who filed a motion to dismiss, including Chris Billingsley, Arthur

Lott, and Lee Rhine, in their individual capacity.

Defendants[16] Chris Billingsley ("Billingsley"), Arthur Lott ("Lott"), and

Lee Rhine ("Rhine") contend that Plaintiff's § 1983 individual capacity

claims are due to be dismissed because they are entitled to qualified

immunity, and further because the complaint fails to meet the heightened

pleading standard.  When reviewing a motion to dismiss on a § 1983 claim

on qualified immunity grounds, a plaintiff's complaint is held to a

heightened pleading standard.  *See GJR Investments, Inc. v. County of*

*Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998). A plaintiff in a § 1983

case must "allege with some specificity the facts which make out its claim."

*Id*.  The Eleventh Circuit has justified the need for heightened pleading in

---

[16]The Jailers' motion to dismiss is due to be granted as to the § 1983 official capacity
claim and the wrongful death claim.  Thus, this Court will only address whether the
Jailers' motion to dismiss should be granted as to the § 1983 claim against Defendants
Rhine, Lott, and Billingsley in their individual capacity.

such cases because of the particular need to "determine whether a defendant's actions violated a clearly established right." *Id.* at 1367.  In order to satisfy the heightened pleading standard, a plaintiff "has to come forward with specific facts, concerning each defendant, indicating that each defendant has violated" plaintiff's constitutional rights.  *Smith v. State of Ala.*, 996 F. Supp. 1203, 1212 (M.D. Ala. 1998).[17]  To plead specific enough information for the court to conclude that the defendants have violated a constitutional right, the plaintiff must allege specific acts on the part of all the defendants.  *Mercer v. Hammonds*, 1998 WL 44530, at *4 (11th Cir. 1998).  Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, courts are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement.

It is well established that "[s]o long as a government official acts

---

[17]*See also Cobb v. Hawsey*, 2007 WL 3086023, at *2 (S.D. Ala. Oct. 19, 2007)(stating that the complaint should, at a minimum, identify the particular right allegedly violated by each named defendant, the constitutional basis for such right, and the basic facts underlying such claim); *Trimble v. Upton*, 2006 WL 2398774, at *4 (M.D. Fla. 2006)(stating that the plaintiff must provide support in the statement of facts for the claimed constitutional violations, and "should clearly describe *how each named defendant* is involved in the alleged claim").

within the scope of his discretionary authority and does not violate clearly

established law [of which a reasonable person would have known], the

doctrine of qualified immunity protects him."[18] *Harbert Int'l, Inc. v. James*,

157 F.3d 1271, 1281 (11th Cir. 1998)(citing *Harlow v. Fitzgerald,* 457 U.S.

800, 818 (1982)); *see also Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir.

2002); *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000).  A public

official is entitled to qualified immunity if his actions were objectively

reasonable.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing

*Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)).  The purpose of

---

[18]According to the Eleventh Circuit:

> Once the affirmative defense of qualified immunity is advanced, the allegations of the complaint take on great importance in a lawsuit. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511 (1985); *Behrens v. Pelletier*, 516 U.S. 299 (1996) ("At the [12(b)(6)] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'"). The Supreme Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only. *See Hunter v. Bryant*, 502 U.S. 224 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."); *Mitchell*, 105 S.Ct. at 2815 (entitlement of qualified immunity is "immunity from suit rather than a mere defense to liability; and . . . is effectively lost if a case is erroneously permitted to go to trial").

*Marsh,* 268 F.3d at 1022.

qualified immunity is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 535 U.S. 194, 206 (2001)).

To be successful on a qualified immunity defense, a public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"[19] *Lee*, 284 F.3d at 1194 (citations omitted). Here, it is clear that Defendants Billingsley, Lott, and Rhine were acting within their discretionary authority because it is only by virtue of their positions as jailers that they had the authority to operate

_____

[19]In the Eleventh Circuit, to "establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc.*, 157 F.3d at 1282; *see also Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)(stating that "a government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority'"). A court should not be "overly narrow" in interpreting the term "discretionary authority." *Jordan v. Doe*, 38 F.2d 1559, 1566 (11th Cir. 1994); *see also Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998)(the determination of whether an officer is acting within his discretionary authority is "quite a low hurdle to clear" because "of the level of generality at which this requirement must be determined"). However, "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice." *Harbert Int'l, Inc.*, 157 F.3d at 1282 (citing *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 830 (11th Cir. 1982)).

a jail, supervise other jailers, and supervise inmates.[20]

Once a defendant makes such a showing, the burden shifts to the plaintiff to prove that qualified immunity does not apply. *Lee*, 284 F.3d at 1194. This is a difficult burden to discharge because "only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." *Id.* (quoting *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)(stating that "courts should think long and hard before stripping defendants of immunity")).

In evaluating a claim of qualified immunity, the Supreme Court has established a two-part test. *See Saucier*, 533 U.S. at 201. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury," do the facts establish a constitutional violation. *Vinyard*, 311 F.3d at 1346; *Saucier*, 533 U.S. at 201. Second, if the Court is convinced that a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established" at the time of the alleged violation such that

---

[20]Plaintiff does not dispute that Defendants were acting within their discretionary authority.  (Doc. 30.)

"every reasonable [defendant] would have been on 'fair notice' that the behavior violated a constitutional right." *Saucier*, 533 U.S. at 201; *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).

Thus, the first step in analyzing any case asserting the defense of qualified immunity "is to determine . . . whether the plaintiff has alleged a deprivation of a constitutional right." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998).

Plaintiff alleges that Jailers Billingsley, Lott, and Rhine violated Decedent's rights under the Fourteenth Amendment[21] to the United States Constitution by exhibiting deliberate indifference to the strong likelihood that Decedent would self-inflict harm, which indifference constituted cruel and unusual punishment and subsequently caused her death.  In order to make out a claim under § 1983 in a prisoner suicide case, under the fourteenth amendment, Plaintiff must allege facts sufficient to show that Jailers Billingsley, Lott, and Rhine were deliberately indifferent to

---

[21]The Eleventh Circuit has stated that "pretrial detainees . . . plainly have a Fourteenth Amendment due process right 'to receive medical treatment for illness and injuries, which encompass a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries including suicide.'" *Cook ex rel. Estate of Tessier*, 402 F.3d at 1115 (internal citations omitted).

Decedent's mental condition and the strong likelihood that Decedent would

commit suicide while at the Jail in violation of Decedent's constitutional

rights. *Haney v. City of Cumming*, 69 F.3d 1098, 1102 (11th Cir. 1995). In

addition, once the defense of qualified immunity is raised, Plaintiff "must

persuade the court that the law was clearly established that the defendant's

conduct in the circumstances amount to 'deliberate indifference.'" *Edwards*

*v. Gilbert*, 867 F.2d 1271, 1274 (11th Cir. 1989).[22]

---

[22] In order for a constitutional right to be "clearly established," it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . [,] and in the light of pre-existing law[,] the unlawfulness must be apparent." *Hope*, 536 U.S. at 739 (quoting *Anderson*, 483 U.S. at 640). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Ed.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996)). In the absence of case law, a plaintiff must show that "the words of a federal statute or federal constitutional provision [are] so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003) (quoting *Vinyard*, 311 F.3d at 1350).

The "law is clearly established that jail officials may not act with deliberate indifference to the risk of inmate suicide." *Brewer v. City of Daphne*, 111 F. Supp. 2d 1299, 1311 (S.D. Ala. 1999)(citing *Edwards*, 867 F.2d at 1274-75). According to the Eleventh Circuit, it is "clearly established that an officer's deliberate indifference to the risk of serious harm to a detainee is a violation of the Fourteenth Amendment." *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1270 (11th Cir. 2005)(citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999)). However, unless there is a "strong likelihood, rather than a mere possibility, that suicide would result from a defendant's actions or inaction," there can be no deliberate indifference. *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994). The governing case law in this judicial circuit indicates that a jail official "cannot be liable under § 1983 for the suicide of a prisoner 'who never had threatened or attempted suicide and who had never

A prison official cannot be found liable unless the official both knows

of and disregards an excessive risk to an inmate's health or safety.  *Farmer*

*v. Brennan*, 511 U.S. 825, 837 (1994).  The deliberate indifference standard

requires both a subjective component (knowledge of the risk or willful

blindness on the part of the official) and an objective component (that a

serious risk of harm actually existed).  *Id*. at 838-39.  To establish a

deliberate indifference, the plaintiff must produce sufficient evidence that

────────────────────

been considered a suicide risk.'" *Id*. (quoting *Edwards*, 867 F.2d at 1277).  In addition, in regard to § 1983 individual capacity claims, it is not deliberate indifference for a jail official to fail to prevent a suicide absent subjective knowledge of an inmate's intent to kill himself or herself.  *See Popham v. City of Talladega*, 908 F.2d 1561, 1654 (11th Cir. 1990).

Here, Plaintiff has pointed to case law holding that the conduct engaged in by the officials in the cited cases violated a decedent's clearly established constitutional rights.  However, Plaintiff has failed to make specific factual allegations against the Jailers in this case, and cannot therefore establish that the law was clearly established that reasonable officers, in circumstances materially similar to these officers, would have known that their conduct amounted to deliberate indifference.  In addition, this lack of specificity  makes it impossible for Plaintiff to meet the burden of showing clearly established law provided the Defendants with fair warning that the conduct was illegal.  Plaintiff has not identified any U.S. Supreme Court case law, Eleventh Circuit Court of Appeals case law, or Alabama Supreme Court case law establishing that officials in Defendants Billingsley's, Lott's, and Rhine's position violated a plaintiff's Fourteenth Amendment rights in a situation materially similar to the one alleged in Plaintiff's complaint.  Because Plaintiff has failed to meet his acknowledged burden of showing that the alleged constitutional violations Decedent suffered were "clearly established," the Defendants are entitled to dismissal with regard to Plaintiff's § 1983 individual capacity claims.  However, as discussed below, since Plaintiff cannot establish that the defendants violated Decedent's constitutional rights, the Court need not address this issue.

the defendant had: "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence." *McElligott*, 182 F.3d at 1255. "Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also 'draw that inference.'" *Gaines v. Mosley*, 2007 WL 4571198, at * 5 (M.D. Ala. Dec. 26, 2007)(quoting *Farmer*, 511 U.S. at 837).  "[I]n a prison suicide case, deliberate indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self-infliction of harm will occur.' '[T]he mere opportunity for suicide, without more, is clearly insufficient to impose  liability on those charged with the care of prisoners.'" *Cook ex rel. Estate of Tessier*, 402 F.3d at 1115 (citations omitted). An officer "cannot be liable under [section] 1983 for the suicide of a prisoner who never had threatened or attempted suicide and who had never been considered a suicide risk." *Id.* at 1116 (internal quotation marks and citation omitted).

Plaintiff's claims against the Jailers Billingsley, Lott, and Rhine must

fail because Plaintiff has not presented any evidence that these defendants had subjective knowledge of a strong likelihood that Decedent would commit suicide. *See Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1269 (11th Cir. 2005). Although Plaintiff presented evidence that Decedent threatened suicide in the presence of one or more of the named defendants, Decedent's friend contacted one or more of the defendants and notified them that Decedent was suicidal, that another inmate reported to guards that Decedent was suicidal, that Decedent was upset and crying during her incarceration and made statements of suicidal ideation, that Decedent was taunted while incarcerated, and that Decedent was not placed in a suicide cell or otherwise observed (Am. Compl.); there is no evidence that any of these particular Jailers personally participated in taunting Decedent or that they were individually aware of the particular circumstances of Decedent's mental condition, specifically her suicidal ideation. *See Snow ex rel. Snow*, 420 F.3d at 1269 (holding that summary judgment as to five defendants was proper where there was no evidence that the defendants knew about the decedent's suicidal ideation); *compare Dolihite v. Maughon By and Through Videon*, 74 F.3d 1027, 1042-43 (11th

Cir. 1996)(where plaintiffs produced evidence establishing that Jurls knew of David's suicide threats, his attempts to hang himself, and his self-injurious behavior, but nevertheless took him off of close observation, court held that plaintiffs presented sufficient evidence to support a finding that Jurls violated a clearly established constitutional right of decedent); *Greason v. Kemp*,[23] 891 F.2d 829, 835-36 (11th Cir. 1990)(where the mental health leader in charge of the inmates had been personally notified of Greason's attempt to kill himself by two inmates and Greason's parents but failed to put Greason on suicide watch, the court held that his conduct violated the decedent's constitutional rights).  There is no evidence that any of these Jailers suspected that Decedent was suicidal, that they had subjective knowledge of Decedent's suicidal ideation, or that they individually failed to do anything about her threat to commit suicide. Therefore, even taking the facts alleged in the complaint as true and assuming that there was a strong likelihood that Decedent represented a

---

[23]*Greason* discusses mental health officials' conduct in regard to an inmate's self-injurious behavior.  891 F.2d 829.  Therefore, the Eleventh Circuit has stated that this case did not clearly establish the law applicable to the conduct of police officers in materially similar positions.  *See Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1399 -1401 (11th Cir. 1994).

suicide risk, Plaintiff has failed to present evidence that Jailers Billingsley, Lott, and Rhine were aware of the facts and could infer that there was a substantial risk that Decedent would commit suicide.  *See Gaines*, 2007 WL 4571198, at * 5 (citing *Farmer*, 511 U.S. at 837)(stating that even if the court assumes that a serious risk of harm and causation existed, the plaintiff must present evidence establishing that the prison official was aware of specific facts from which to draw an inference of the substantial risk of serious harm and that the prison official actually drew such inference).  In addition, "[a]s a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss."  *South Fla. Water Mgmt. Dist. v. Montvalo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996)(citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir.1974)).  Since Plaintiff has presented only vague allegations against "one or more of the named defendants," this Court cannot accept these "conclusory allegations and unwarranted deductions of fact" as what Jailers Billingsley, Lott, and Rhine knew about Decedent's suicidal ideation.  Further, similar complaints,  where the plaintiff claims that "the defendants" violated his civil rights, have been described as examples of

shotgun pleadings, which the Eleventh Circuit has condemned as violating Federal Rules of Civil Procedure 8(a) and 10(b).  *See Cornelius v. City of Andalusia*, 2007 WL 4224036, at *5 (M.D. Ala. Nov. 28, 2007)(citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)(where Cornelius alleged that the defendants violated his civil rights but failed to identify the conduct of any specific defendant that rendered any defendant liable, the court stated that the plaintiff failed to state with particularity the § 1983 claim).  Plaintiff has failed to plead specific facts sufficient to establish that Defendants Billingsley, Lott, and Rhine personally participated in the alleged acts which caused Decedent's death.  Since Plaintiff has failed to make any specific allegations with respect to each individual jailer, Plaintiff has failed to meet the heightened pleading requirement.  Consequently, the court cannot determine if the jailers have violated Decedent's rights.  *See GJR Investments, Inc.*, 132 F.3d at 1367 (stating that a § 1983 plaintiff must allege with some specificity the facts which make out his claim; otherwise, the complaint is due to be dismissed for failure to plead with particularity). Thus, based on the Amended Complaint, it is practically impossible to match the specific acts of the defendants to violations of Decedent's rights.

Plaintiff contends that, based on *Snow ex rel. Snow v. City of Citronelle, Ala.,* the defendants had subjective knowledge that there was a strong risk that Decedent would attempt suicide and deliberately failed to take any action to prevent the suicide.  420 F.3d 1262.  In *Snow ex rel. Snow*, the plaintiff presented evidence that Officer Chennault had been informed by a jailer at the Washington County jail that within the month prior to her death the decedent tried to cut her wrist while in custody; he had told the decedent's family that the decedent was suicidal; he did not tell anyone else at the jail about his belief that the decedent was a strong suicide risk; and he did not take the precautions he would have if he had regarded the decedent as a suicide risk.  420 F.3d at 1270.  However, in this case, Plaintiff has presented no such evidence.  Plaintiff makes only vague allegations that "one or more of the named defendants" knew of or had been informed of Decedent's suicidal ideation.  These bare allegations, without more, are insufficient to state a claim that the Jailers violated Decedent's constitutional rights.  *See GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1368 (11th Cir. 1998)(where plaintiff's complaint stated that "faceless 'other' permit applicants were given better

treatment," court held that the complaint did not state an equal protection claim).

In addition, Plaintiff argues that because Billingsley, Lott, and Rhine did not contend in their motion to dismiss that they were not on duty on the date of Decedent's death that they thereby appreciated Decedent's suicide risk.  (Doc. 30 at 9.)  Defendants Billingsley, Lott, and Rhine contend that "[i]f this case gets past the motion to dismiss stage," they will argue that they were not on duty or present during the duration of Decedent's incarceration.  (Doc. 32 at 3.)  However, since a 12(b)(6) motion requires the facts alleged in the complaint to be taken as true, this Court must assume that these Defendants were on duty.   Regardless, since the allegations that these particular jailers were on duty at the time of Decedent's incarceration is the only allegation specifically referencing Defendants Billingsley, Lott, and Rhine, the Amended Complaint still does not present facts tending to show that these defendants knew of Decedent's suicidal ideation, disregarded the risk that Decedent would commit suicide, or failed to take action based on this knowledge.

Based on the foregoing, the facts, when viewed in the light most

favorable to Plaintiff, do not establish that Defendants Billingsley, Lott, and Rhine had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Decedent, that these Defendants actually drew this inference, and that they thereafter ignored this risk.  Therefore, this court concludes that these Defendants are entitled to qualified immunity, and the motion to dismiss is due to be granted.

### C.    Fictitious Parties.

Plaintiff argues that the Court should alter or amend its Order granting Defendants' Motion to Dismiss Fictitious Parties.  (Doc. 28.)  On December 21, 2007, this Court granted Defendants'[24] Motion to Dismiss Fictitious Parties.  (Doc. 26.)  On January 3, 2008, Plaintiff filed his Motion to Alter or Amend the Order.  (Doc. 28.)

In his Motion, Plaintiff contends that the Court committed legal error in dismissing the fictitious partes.[25]  According to Plaintiff, the Court failed

[24]The defendants who moved for the dismissal of fictitious parties included Bibb County Commission, Sheriff Hannah, and Jailers Gothard, Foster, Rhine, Lott, and Billingsley. (Doc. 16.)

[25] Plaintiff argues that he was not afforded an opportunity to respond to the motion to dismiss fictitious parties because the motion was stayed; however, this Court never granted Plaintiff's motion to stay, rather the motion was later found moot.  (Doc. 25.) Additionally, the motion to dismiss fictitious parties was filed after Plaintiff's motion to

to recognize the proposition that in removed cases, a plaintiff may use Alabama's fictitious party practice rules where state law provides the applicable statute of limitations. *See Saxton v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001); *Gaines*, 242 F. Supp. 2d 1153. In *Saxton v. ACF Industries, Inc.*, a diversity case involving state law claims, the court addressed the issue of whether the plaintiff's amended complaint, which substituted an identified defendant for a fictitious defendant, related back to the filing of the initial complaint. 254 F.3d at 961. The court held that in diversity cases where state law provides the applicable statute of limitations, Federal Rule of Civil Procedure 15 allows federal courts to apply state law relation-back rules. *Id.* at 963. Since the state law applicable to plaintiff's claims provided the applicable statute of limitations, Alabama law governed relation back of amendments; therefore, since Alabama permits fictitious party pleading, the plaintiff could amend to substitute the actual party for the fictitious parties, provided that he satisfied Alabama's rules governing relation back of fictitiously named parties. *Id.* In *Gaines v.*

---

stay, and was therefore not addressed in Plaintiff's motion to stay. (Docs. 11 & 16.) Regardless, this Court will consider the merits of Plaintiff's Motion to Alter or Amend.

*Choctaw County Comm'n*, the court stated that an absolute rule against fictitious party practice in federal courts would be unwise, "especially . . . in cases removed from Alabama state courts based on diversity where the inclusion of fictitious parties may have a bearing principles of relation back."  242 F. Supp. 2d at 1166.

Upon careful review of Plaintiff's contention that the Court committed legal error in dismissing the fictitious parties, the Court concludes that Plaintiff has failed to make the requisite showing that the Court committed legal error for two reasons.  First, the cases upon which Plaintiff relies are distinguishable from the case at hand.  The court in *Gaines v. Choctaw County Comm'n* stated that a rule against the use of fictitious parties in federal court "might violate the federal court's obligation to apply the rules of decision in the forum state," especially in cases which are removed based on diversity.  In *Saxton v. ACF Industries, Inc.,* the federal court had jurisdiction based on diversity and the plaintiff had identified an actual defendant who he was attempting to substitute for a fictitious party.  In contrast, in this case, the Court has jurisdiction based on a federal question and Plaintiff has not provided an actual name for the fictitiously named

defendants, rather Plaintiff is merely arguing that the fictitious parties were improperly dismissed.

Moreover, federal courts recognize that fictitious party practice is generally not allowed.  The Eleventh Circuit recognizes that "the Federal Rules [of Civil Procedure] do not authorize suit against fictitious parties." *CSX Transp., Inc. v. United Transp. Union*, 236 Fed. Appx. 562, 563 n.1 (11th Cir. 2007); *see also* FED. R. CIV. P. 10(a)("[i]n the complaint, the title of the action shall include the names of all the parties").  In addition, there is "no provision for fictitious party practice under" federal statute or any other federal law.  *Floyd v. Allstate Ins. Co.*, 989 F. Supp. 1435, 1436 n.1 (M.D. Ala. 1998); *Weeks v. Benton,* 649 F. Supp. 1297, 1298 (S.D. Ala. 1986). Therefore, courts generally dismiss fictitious parties based on the notion that  "there is no fictitious party practice in federal courts."  *See Siebert v. Allen*, 2007 WL 3257013, at *4 n.17 (M.D. Ala. Oct. 22, 2007)(citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *Harris v. Palm Harbor Homes, Inc.*, 198 F. Supp. 2d 1303, 1304 n. 6 (M.D. Ala 2002); *Edwards v. Ala. Dep't of Corr.*, 81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000)); *Rommell v. Automo. Racing Club of Am., Inc.*, 964 F.2d 1090, 1098

(11th Cir. 1992)(noting that the district court found "that there is no fictitious party practice in federal court"); *Perry v. Fleetwood Enters., Inc.*, 2007 WL 2893410, at *1 n. 1 (M.D. Ala. Sept. 28, 2007)(dismissing the fictitious defendants since "[f]ederal courts do not allow fictitious party practice"); *Wiggins v. Risk Enter. Mgmt. Ltd.*, 14 F. Supp. 2d 1279, 1279 n.1 (M.D. Ala. 1998)(dismissing unnamed defendants from the action since "there is no fictitious party practice in Federal Courts").  Therefore, while Plaintiff contends that based on the cited case law that the fictitious parties should not have been dismissed, the Court finds that Plaintiff has not demonstrated that he has a party to substitute, so the dismissal of fictitious parties is a non-issue, and further the Order dismissing the fictitious parties was properly entered.

Thus, Plaintiff's request to vacate the Order granting Defendants' motion to dismiss the fictitious parties and enter a new order denying the motion to dismiss is due to be denied.  However, the Court hereby amends its ruling on fictitious parties as to dismiss the fictitious parties without prejudice to the right of any party to move to amend and take advantage of

the provisions of applicable relation-back rules.[26]

V.    Conclusion.[27]

For the reasons stated above, Defendants' motions to dismiss will be

granted in part and denied in part.   Sheriff Hannah's motion to dismiss is

due to be granted in its entirety. Jailers Gothard, Billingsley, Foster, Lott,

and Rhine are entitled to dismissal from this entire action.   With regard to

Plaintiff's claims against Bibb County Commission, the § 1983 claims and the

state law wrongful death claim are due to be dismissed; however, the state

law claim under § 14-6-19 against the Commission remains.   Adam Moore's

---

[26]Should Plaintiff discover the identities of 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and
15, the Court will entertain a properly drafted motion to amend pursuant to Rule 15 of
the Federal Rules of Civil Procedure.

[27]Defendants have also moved for costs and attorneys fees pursuant to 42 U.S.C. § 1988.
(Doc. 5.)  This Section provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a,
> 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20
> U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42
> U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized
> Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil
> Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this
> title, the court, in its discretion, may allow the prevailing party, other
> than the United States, a reasonable attorney's fee as part of the costs,
> except that in any action brought against a judicial officer for an act or
> omission taken in such officer's judicial capacity such officer shall not be
> held liable for any costs, including attorney's fees, unless such action was
> clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b)(2006).  Defendants' request for attorney's fees under Section 1988
is due to be denied.

motion to dismiss is due to be granted; however, Plaintiff's § 1983 individual capacity claim against Moore remains.  Fictitious parties remain dismissed from the cause; however, the order is amended to dismiss such parties without prejudice.  A separate order in conformity with this opinion will be entered.

Done this 5th day of March 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671